```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
COLOUR & DESIGN,                    :
                                    :
               Plaintiff,           :   04 Civ. 8332 (MBM)
                                    :
      -against-                     :   OPINION AND ORDER
                                    :
U.S. VINYL MANUFACTURING CORPORATION and :
STEVEN W. MCCLOUD,                  :
                                    :
               Defendants.          :
------------------------------------X
```

APPEARANCES:

MARC A. LIEBERSTEIN, ESQ.
(Attorney for Plaintiff)
PITNEY HARDIN LLP
7 Times Square
New York, NY 10036
(212) 297-5800

ARTHUR M. PESLAK, ESQ.
(Attorney for Defendant)
MANDEL & PESLAK LLC
80 Scenic Drive, Suite 5
Freehold, NJ 07728
(732) 761-1610

MICHAEL B. MUKASEY, U.S.D.J.

Colour & Design, Inc. ("Colour & Design") sues U.S. Vinyl Manufacturing Corporation ("U.S. Vinyl") and its president and CEO, Steven W. McCloud, for copyright infringement, 17 U.S.C. § 101 et seq. (the "Copyright Act"), and unfair competition under New York state law. Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and the unfair competition claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, they move to transfer this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motions are denied.

I.

Colour & Design, an Arkansas corporation, owns the copyrights to the "Sarda" and "Cambria Stripe" (collectively, "plaintiff's patterns") wallcovering patterns. (Compl. ¶¶ 1, 8) U.S. Vinyl, a Texas corporation headquartered in the Northern District of Georgia, manufactures and sells wall coverings entitled "Fiery Red," "Sunflower," "Shantung Gold," "Shantung Copper," "Peridot II," and "Sunwashed Stripe." (collectively, "infringing patterns") (Id. ¶¶ 2, 11) According to Colour & Design, these patterns "are nearly identical copies of and are substantially and confusingly similar to the overall appearance

1

of [plaintiff's patterns]." (Id. ¶ 11) Colour & Design filed the instant complaint on October 21, 2004.

II.

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) (original jurisdiction over federal copyright claims) and Section 1338(b) (original jurisdiction over unfair competition claims when joined with a substantial and related federal copyright claim). On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendants" by a preponderance of the evidence. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). At the motion to dismiss stage, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor. . . ." A.I. Trade Fin. Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

III.

The jurisdictional analysis is the same for both U.S. Vinyl and Steven McCloud, who can be held individually liable for the acts of infringement and unfair competition. See, e.g., Editorial Musical Latino Americana, S.A. v. MAR Int'l Records,

Inc., 829 F. Supp. 62, 64 (S.D.N.Y. 1993). In federal copyright cases, the law of the forum state governs whether a party is subject to personal jurisdiction. See Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp., No. 04-5002, 2005 WL 357125, at *1 (S.D.N.Y. Feb. 14, 2005) (citing PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)).

> The New York long-arm statue provides:
>
> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> . . .
>
> (2) commits a tortious act within the state.

N.Y. CPLR 302(a). "Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers." Editorial, 829 F. Supp. at 64-65 (citations omitted); see also Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 180 (S.D.N.Y. 1995). Colour & Design alleges that in response to a phone inquiry made by William Belmont, a private investigative attorney working on its behalf, U.S. Vinyl shipped to a New York City address a wallcovering sample book entitled "Suntones II" that included the allegedly infringing patterns. (Declaration of William Belmont, 12/13/04 ("Belmont Decl.") ¶¶ 1-4) This

3

shipment and offer of the patterns for sale to a New York customer is enough to confer jurisdiction.

Moreover, U.S. Vinyl sells its products primarily to large commercial customers, including hotel chains. (Declaration of Steven McCloud ("McCloud Decl.") ¶ 8) It is undisputed that the hotel chains to which U.S. Vinyl sells its wall coverings generally have numerous properties in New York. Also, U.S. Vinyl operates a website that provides information, sales contacts, and links to U.S. Vinyl sales representatives. (See Exs. 7-9 to Pl.'s Opp'n) Colour & Design alleges that at the time it filed this lawsuit, the infringing patterns were available to customers -- presumably for viewing or sale -- on the website as part of the "Suntones II Collection" or part of the approved patterns for the Courtyard Inn by Marriott and Residence Inn by Marriott hotel chains. (Declaration of Tommy Abshire ("Abshire Decl.") ¶ 11) Since then, the link to the "Suntones II Collection" has been removed. (Id.) However, "many of the infringing patterns are still advertised and made available on the U.S. Vinyl website as parts of the [hotel] programs." (Id.; Ex. 9 to Pl.'s Opp'n) Finally, the U.S. Vinyl website lists Jerry, Ian, and Peter Fruchtman as its "sales representatives" for New York. (Ex. 7 to Pl.'s Opp'n); see Topps Co. v. Gerrit J. Verburg Co., 961 F. Supp. 88, 91 (S.D.N.Y. 1997) ("[e]ven if a non-domiciliary defendant commits infringement through sales by independent

4

brokers or retail merchants in New York, this constitutes tortious conduct within New York and subjects the defendant to jurisdiction under CPLR 302").

The exercise of personal jurisdiction over defendants in this case does not offend due process. "Ordinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." <u>Topps</u>, 961 F. Supp. at 90. Here, minimum contacts requirements are satisfied by an actual offer of sale and shipment of infringing products to an entity in New York, the maintenance of an interactive website accessible in New York, and relationships with sales representatives designated to serve customers in New York. <u>See</u> <u>Capitol Records, Inc.</u> v. <u>Kuang Dyi Co. of RM</u>, No. 03-520, 2004 WL 405961, at *2 (S.D.N.Y. Mar. 4, 2004).

"A corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable." <u>Editorial</u>, 829 F. Supp. at 66 (citing <u>Lauratex Textile Corp.</u> v. <u>Allton Knitting Mills, Inc.</u>, 517 F. Supp. 900 (S.D.N.Y. 1981)). So long as he can be held personally liable for U.S. Vinyl's acts of infringement and unfair competition as alleged in the complaint, McCloud is subject to personal jurisdiction. <u>Id.</u>; (Compl. ¶¶ 3, 12 (McCloud "directs and controls the actions of Defendant U.S.

Vinyl, and has authorized, controlled, and directed U.S. Vinyl to copy the copyrighted Colour & Design Patters and manufacture, sell and distribute the Infringing Wallcoverings" and "receives pecuniary benefit" from the alleged infringement)).

Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is denied.

IV.

Venue in federal copyright infringement claims is governed by 28 U.S.C. § 1400(a), which states that an action "may be instituted in the district in which the defendant or his agent resides or may be found." Editorial, 829 F. Supp. at 66. "It is well-established that a defendant 'may be found' in any district in which he is amenable to personal jurisdiction; thus, venue and jurisdiction are coextensive." Id.; Capitol Records, 2004 WL 405961, at *1. Hence, venue is proper in this district.

"Motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." Hall v. South Orange, 89 F. Supp.2d 488, 493 (S.D.N.Y. 2000). "The inquiry on a motion to transfer is two-fold." Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp.2d 203, 208 (S.D.N.Y. 1998). First, it must be determined whether the action sought to be transferred is one that "might have been brought" in the

transferee court.  Id.; 28 U.S.C. 1404(a).  The parties do not appear to dispute that the Northern District of Georgia is a district where the action might have been brought.

Second, several factors dealing with the "convenience" of a transfer and the "interest of justice" must be considered to determine whether a transfer is appropriate.  Orb Factory, 6 F. Supp.2d at 208.  The moving party must make "a clear and convincing showing that the balance of convenience favors [its] choice."  Hubbell, Inc. v. Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995); Lipton v. The Nature Co., 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992) ("heavy burden" in a copyright infringement action).  The following factors must be considered: (i) convenience of the witnesses and parties; (ii) the locus of operative facts in the case; (iii) the location of relevant documents and access to proof; (iv) the forums' familiarity with the governing law; (v) the availability of process to compel the attendance of unwilling witnesses; (vi) the weight accorded to a plaintiff's choice of forum; and (vii) trial efficiency and the interest of justice generally.  See 28 U.S.C. § 1404(a); Orb Factory, 6 F. Supp.2d at 208.

The convenience of the parties and non-party witnesses is generally considered the most important factor in a motion to transfer venue.  See, e.g., Coker v. Bank of Am., 984 F. Supp. 757, 765 (S.D.N.Y. 1997).  "In order to meets its burden, the

motion of the party seeking transfer must specifically list he evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony." Editorial, 829 F. Supp. at 66-67; see also Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978).

Defendants have not identified specific witnesses they intend to call, let alone any hardship to those witnesses. Nor has any proposed testimony been specified. Defendants simply and baldly assert that "no witnesses are located in New York" and that "all witnesses are in either Arkansas or Georgia." (Defs.' Mem. of Law at 9) Without more, such assertions are not sufficient to justify a transfer to the Northern District of Georgia. See Orb Factory, 6 F. Supp.2d at 208-09 ("Vague generalizations and failure to clearly specify key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue."). Also, defendants have not identified any unwilling witnesses over whom there may be an issue as to availability of process. See, e.g., GPA, Inc. v. Liggett Group, Inc., No. 94-5735, 1994 WL 537017, at *2 (S.D.N.Y. Oct. 4, 1994) (declining to find availability of process to compel unwilling witnesses as a factor in favor of transfer where defendant failed to offer evidence that witnesses would be unwilling to travel).

Likewise, defendants' assertion that relevant documents and sources of proof warrant transfer is accorded little weight without a detailed showing of the burden defendants would incur absent transfer. Their cursory attempt to justify transfer based on the location of documents and evidence does little more than claim that "U.S. Vinyl documents, Steven McCloud and other U.S. Vinyl employees who may have knowledge relevant to this case" are located within defendants' home forum. (Defs.' Mem. of Law at 8); see, e.g., Intria Corp. v. Intira Corp., No. 00-7198, 2000 WL 1745043, at *4 (Nov. 27, 2000) (defendant's blanket assertion that all documents relating to the litigation were in defendant's home forum was not enough to favor transfer). Accordingly, given defendants' failure to specify the nature and volume of the documents they plan to use in support of their case, or the difficulty in transporting such documents, this factor weighs against transfer.

None of the remaining factors weigh in defendants' favor. Because this is a federal copyright action, this court and the Northern District of Georgia are presumed to be equally familiar with the governing law. See Capitol Records, 2004 WL 405961, at *4. As for the locus of operative facts, defendants simply claim that "no relevant activities occurred in New York." (Defs.' Mem. of Law at 9) Colour & Design points to defendants' offer for sale and shipment of samples of the allegedly

infringing designs to New York, in response to the inquiry made by Colour & Design's investigator, William Belmont. Moreover, U.S. Vinyl has designated New York sales representatives. Therefore, New York has a sufficient connection to the locus of operative events, and the "center of gravity of the litigation" is not tilted in favor of transfer, especially where defendants' claims are so vague. Capitol Records, 2004 WL 405961, at *4.

The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff. See Nabisco, Inc. v. Brach's Confections, Inc., No. 00-5875, 2000 WL 1677935, at *3 (S.D.N.Y. Nov. 8, 2000). Colour & Design has identified several potential witnesses all of whom reside in or very close to the Southern District of New York. (Pl.'s Opp'n at 20) Although defendants note that their witnesses will include U.S. Vinyl employees located in Georgia, no further detail is provided. Hence, plaintiff's witnesses would be as much inconvenienced traveling to Georgia as would defendants' witnesses if required to travel to New York. Accordingly, this factor does not weigh in favor of transfer.

Although "ordinarily plaintiff's choice of forum is given significant weight in a Section 1404(a) analysis, where the forum chosen is not the plaintiff's home forum, the choice is given less deference." Foley v. Sammons Preston, Inc., No. 03-5485, 2004 WL 35438, at *5 (S.D.N.Y. Jan. 6, 2004) (quoting Kiss

10

My Face v. Bunting, No. 02-2645, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30. 2003)). However, Colour & Design's ongoing business activities in New York and New York's strong connection to the "locus of operative facts" weigh against transfer. See Goggins v. Alliance Capital Mgmt., 279 F. Supp.2d 228, 232 (S.D.N.Y. 2003); Virgin Enters. Ltd. v. Am. Longevity, No. 99-9854, 2001 WL 34142402, at *11 (S.D.N.Y. Mar. 1, 2001).

Defendants do not argue how trial efficiency or "the interest of justice" would be compromised by litigating in this district.

Defendants have failed to meet their burden of demonstrating that transfer to the District of Georgia is warranted. Their motion to change venue is denied.

V.

Defendants also move to dismiss Colour & Design's unfair competition claim as preempted by the Copyright Act. That Act grants copyright holders the exclusive rights "(1) to reproduce the copyrighted work . . .; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) . . . to perform the copyrighted work publicly; and (5) . . . to display the copyrighted work publicly." 17 U.S.C. § 106.

11

"A state cause of action is preempted by federal copyright laws if the subject matter of the state-law claims might fall within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993); 17 U.S.C. § 301. However,

> if an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action," then the right does not lie 'within the general scope of copyright' and there is no preemption." . . . A state law claim is not preempted if the "extra element" changes the "nature of the action so that it is qualitatively different from a copyright infringement claim."

Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992) (citations omitted and emphasis in original).

Following this "extra element" test, the Second Circuit has held that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by federal copyright law. See, e.g., Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986); Warner Bros., Inc. v. Am. Broad. Cos., 720 F.2d 231, 247 (2d Cir. 1983); Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 919 & n.15 (2d Cir. 1980); see also Morris v. Buffalo Chips Bootery, Inc., 160 F. Supp.2d 718, 721-22 (S.D.N.Y. 2001). However, the Court has held also that state law unfair competition claims that

12

allege the tort of "passing off" one's goods as those of another or creating confusion as to the source of goods are not preempted because they do not entail the assertion of rights equivalent to those protected by federal copyright law. See Lone Wolf McQuade Assoc. v. CBS, Inc., 961 F. Supp. 587, 598-99 (S.D.N.Y. 1997) (citing Warner Bros., 720 F.2d at 247 (citing Nimmer on Copyright §§ 1.01[B][1] n. 47, 2.12 n. 25 (1983))). Put another way, "confusion as to source" constitutes an "extra element." Samara Bros., Inc. v. Wal-Mart Stores, Inc., 165 F.3d 120, 131-32 (2d Cir. 1998).

Whether Colour & Design's unfair competition claim is preempted depends on the nature of the claim. "Claims for unfair competition in New York have traditionally involved passing off or malicious or fraudulent interference with good will." Fun-Damental Too, Ltd. v. Gemmy Industries Corp., No. 96-1103, 1996 WL 724734, at *2 (S.D.N.Y. Dec. 17, 1996) (quoting Nifty Foods Corp. v. Great Atl. & Pac. Tea Co., 614 F.2d 832, 842 (2d Cir. 1980)). There are two types of passing off claims. "In reverse passing off, the wrongdoer sells plaintiff's products as its own. It contrasts with passing off, where the wrongdoer sells its products as the plaintiff's." Id. (quoting Waldman Publ'g Corp. v. Landoll, Inc., 848 F. Supp. 498, 500-01 (S.D.N.Y.), vacated in part on other grounds, 43 F.3d 775 (2d Cir. 1994)). Unfair competition claims alleging the former are preempted because they

are "equivalent to a claim for copyright infringement." See, e.g., Am. Movie Classics Co. v. Turner Entm't Co., 922 F. Supp. 926, 934 (S.D.N.Y. 1996) (citing Waldman, 848 F. Supp. at 505).

Colour & Design contends that its unfair competition claim is based on confusion as to source and that because "customer confusion" constitutes an "extra element," the claim is not preempted by the Copyright Act. See Am. Footwear Corp. v. Gen. Footwear Corp., 609 F.2d 655, 664 (2d Cir. 1979) (to succeed on unfair competition claim, plaintiff must show likelihood of confusion or deception of the consuming public as to source). In its complaint, Colour & Design alleges:

> By reason of the foregoing conduct and acts, Defendants . . . have been and are engaging in unfair competition with Plaintiff by copying, publishing, displaying, vending, distributing, selling, utilizing, promoting and otherwise commercially benefiting from wallcoverings and designs which are likely to deceive and confuse the public into believing that Defendants' Infringing Wallcoverings and designs are Plaintiff's Copyrighted Deigns or are sponsored by, licensed by, endorsed by or are otherwise associated with Plaintiff and by misappropriating or attempting to misappropriate the copyrighted [] Designs and Plaintiffs goodwill and reputation which are associated therewith.

(Compl. ¶ 20) In other words, Colour & Design's unfair competition claim is one of passing off. It alleges that U.S. Vinyl's product is similar enough to its own to confuse consumers and lead them to believe that U.S. Vinyl's patterns are Colour & Design's. Confusion between the two sets of designs constitutes

an "extra element" that insulates the unfair competition claim from preemption. Accordingly, defendants' motion to dismiss Colour & Design's unfair competition claim is denied.

\*     \*     \*

For the reasons set forth above, defendants' motions are denied.

SO ORDERED:

Michael B. Mukasey
U.S. District Judge

Dated:  New York, New York
        May 19, 2005